UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL JAMES WARD,

      Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

17-CV-1008
DECISION AND ORDER

---

On October 6, 2017, the plaintiff, Michael James Ward, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On July 30, 2018, Ward moved for judgment on the pleadings, Docket Item 9, and on October 1, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13. On October 22, 2018, Ward replied. Docket Item 14.

For the reasons stated below, this Court grants Ward's motion and denies the Commissioner's cross-motion.

## BACKGROUND

### I. PROCEDURAL HISTORY

On August 22, 2013, Ward protectively filed a Title II application for disability and disability insurance benefits. Tr. 18. He claimed that he had been disabled since July 31, 2013, Tr. 145, due to "[h]eart problems," "[s]upraventricular tachycardia,"

"[d]iabetes," "[t]ransposition of the great vessels," "[c]ardiomyopathy," "defective lungs due to diaphragm muscle," "no lower right lobe of lung due to paralyzed diaphragm," "[l]ow ejection fraction," and "[h]eart [f]ailure." Tr. 162.

On May 17, 2013, Ward's application was denied because he was not disabled under the Act. Tr. 82. He requested a hearing before an administrative law judge ("ALJ"), Tr. 143, which was held on April 14, 2016, Tr. 33. The ALJ then issued a decision on May 17, 2016, confirming the finding that Ward was not disabled. Tr. 28. Ward appealed the ALJ's decision, but his appeal was denied, and the decision then became final. Tr. 1-3.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Ward's objection. Ward was examined by several different providers but one—Marie Iacona, M.D., a cardiologist—is of most significance to this Court's review.

### Marie Iacona, M.D., a Cardiologist

On March 19, 2014, Ward was examined by Dr. Iacona, a cardiologist. Tr. 263. Dr. Iacona diagnosed Ward with "corrected congenital heart disease-transposition of the great vessels in addition to paroxysmal supraventricular tachycardia, nonischemic cardiomyopathy with an ejection fraction of 45%." Tr. 265. She also determined that Ward "has significant dyspnea when walking from room to room" and that he has "atypical chest pain." *Id.* And she indicated that Ward has other cardiovascular issues that include morbid obesity, non-insulin-dependent diabetes mellitus, and dyslipidemia. *Id.* Dr. Iacona found that Ward also had "second degree AV block . . . due to agents being utilized to treat his" paroxysmal supraventricular tachycardia. *Id.* Dr. Iacona

referred Ward to an electrophysiologist to opine on whether a pacemaker would be appropriate. *Id.*

As a result of all that, Dr. Iacona indicated that insurers should "consider [Ward] a candidate for longterm medical disability." *Id.*

### III. THE ALJ'S DECISION

In denying Ward's application, the ALJ evaluated Ward's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical

3

impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. See 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Ward was had "not engaged in substantial gainful activity since July 31, 2013, the alleged onset date." Tr. 20. At step two, the ALJ found that Ward had the following severe impairments: chronic heart failure and obesity. Id. The ALJ found that Ward also had several non-severe impairments: "diabetes mellitus; hypertension (HTN); anxiety; status post, transposition of the great vessels; and sleep apnea." Id. At step three, the ALJ determined that Ward did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 22.

In assessing Ward's RFC, the ALJ determined that Ward could perform sedentary work, as defined in 20 C.F.R. § 404.1567(a).[1] Tr. 22. The ALJ explicitly found that Ward "is able to do simple tasks; can occasionally climb ramps, and stairs; but never ladders or scaffolds; can occasionally balance, stoop, kneel, crouch or crawl; can occasionally work at unprotected heights; and can occasionally be exposed to dust, odors, fumes or other pulmonary irritants." Tr. 22-23.

At step four, the ALJ determined that Ward was "unable to perform any past relevant work." Tr. 26. But at step five, the ALJ concluded that Ward could perform "jobs that exist in significant numbers in the national economy." Tr. 26. Specifically, the ALJ determined that Ward could work as a surveillance systems monitor, a telephone information clerk, or a file assembler. Tr. 27.

## **LEGAL STANDARDS**

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

5

evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

Ward raises two objections to the ALJ's formulation of his RFC. First, Ward argues that the ALJ erred in failing to address the opinion of Dr. Iacona. Docket Item 9-1 at 10-11. Second, Ward contends that his RFC is not supported by substantial evidence, especially because it conflicts with the opinion of a consulting examiner. *Id*. at 11-13.

When determining a plaintiff's RFC, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). "Among the ALJ's legal obligations is the duty to adequately explain [her] reasoning in making the findings on which [her] ultimate decision rests, and in doing so [s]he must address all pertinent evidence." *Klemens v. Berryhill*, 703 F. App'x 35, 36 (2d Cir. 2017). "Although the ALJ was not required to mention every piece of evidence, [she was required] to confront the evidence in [Ward's] favor and explain why it was rejected before concluding that [his] impairments did not impose more than a minimal limitation on [his] ability to perform basic work tasks." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) (quoting *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)).

Here, the ALJ failed to address Dr. Iacona's opinions in her assessment of what the objective medical evidence said about Ward's limitations. Dr. Iacona diagnosed Ward with several severe conditions and indicated that those conditions undermined

6

Ward's ability to work. Tr. 265. For example, Dr. Iacona found that Ward has significant shortness of breath when simply moving from room to room. *Id.* Yet the ALJ did not "acknowledge [Dr. Iacona's opinion] or . . . explain its implicit rejection." *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002) (quoting *Maisch v. Heckler*, 606 F. Supp. 982, 991 (S.D.N.Y. 1985)). In fact, without addressing Dr. Iacona's opinion, the ALJ determined that Ward is able to climb ramps and stairs. Tr. 23.

The Commissioner argues that Dr. Iacona's opinions were not "medical opinions" as that term is used in 20 C.F.R. § 404.1527(c). Docket Item 13-1 at 14. Therefore, she argues, the ALJ was not required to consider them in formulating Ward's RFC. *Id.* For example, the Commissioner states that Dr. Iacona's finding that Ward "'experienced significant dyspnea when walking from room to room' is not a 'medical opinion' because it is not a statement about what [Ward] can still do." Docket Item 13-1 at 15.

But the definition of "medical opinion" that the Commissioner uses here conflicts with the agency's definition in its regulations. The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Here, Dr. Iacona's findings are indeed statements from a medical source—specifically, a cardiologist and therefore a particularly important medical source given Ward's impairments—reflecting a judgment about the nature and severity of Ward's impairments. Her findings reflect Ward's symptoms and his physical restrictions. Therefore, Dr. Iacona rendered a medical opinion as defined in § 404.1527(a)(1).

7

That is especially true of Dr. Iacona's opinion that Ward should be considered for "longterm medical disability." Tr. 265. The Commissioner argues that this statement "was not a 'medical opinion,'" Docket Item 13-1 at 17; instead, she says "[i]t was a request, not a judgment about the nature and severity of [Ward's] impairments." *Id.* But the Commissioner's position again conflicts with the agency's own regulations. Medical opinions are *not only* judgments from acceptable medical sources about the nature and severity of a claimant's impairments; they also may be "statements from acceptable medical sources that *reflect* judgments about the nature and severity of [a claimant's] impairment[s]." § 404.1527(a)(1) (emphasis added).

Surely, Dr. Iacona's opinion that Ward is a candidate for longterm disability *reflects* her judgment about the nature and severity of Ward's impairments. Indeed, there is little doubt that her statement could not have been made but for a judgment that Ward's impairments were severe.

This Court recognizes that the ultimate determination of whether a claimant is disabled within the meaning of the Act is reserved to the Commissioner, and the agency "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R. § 404.1527(d)(3). But the ALJ still must grapple with the medical opinion implicit in Dr. Iacona's statement that Ward should not be working. *See Thomas*, 826 F.3d at 961; Social Security Ruling 06-03p, 2006 WL 2329939, at *6 ("the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the

8

case").; Social Security Ruling 96-5p, 1996 WL 374183, at *3 ("opinions from any medical source on issues reserved to the Commissioner must never be ignored").

SSA regulations required the ALJ to evaluate medical opinions in the record from all sources. 20 C.F.R. § 404.1527(c). She did not do that. This case therefore is remanded for a full evaluation of Dr. Iacona's opinions and so that the ALJ can then reweigh the evidence. Without written consideration of Dr. Iacona's opinions, this Court cannot "be satisfied that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran*, 569 F.3d at 112 (quoting *Cruz v. Sullivan*, 912 F.3d 8, 11 (2d Cir. 1990)).

Ward also contends that his RFC is not supported by substantial evidence, especially because it conflicts with an opinion from a consulting examiner—Donna Miller, D.O., a family medicine physician. *Id.* at 11-13. Because this "remaining issue[] . . . may be affected by the ALJ's treatment of this case on remand," this Court does not reach it. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). Since Ward's "case must return to the agency either way for the reasons already given, the Commissioner will have the opportunity on remand to obviate this dispute . . .by making clear" how Dr. Miller's opinion supports the ALJ's finding that Ward can perform sedentary work (if the ALJ adheres to that conclusion). *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 94 (2d Cir. 2019).

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 13, is DENIED, and Ward's motion for judgment on the pleadings, Docket Item 9, is GRANTED in part and DENIED in part. The decision of the

Commissioner is VACATED and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: May 14, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE